## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| BRAYDON PREECE, Individually and For Others Similarly Situated,<br><br>   Plaintiff,<br><br>v.<br><br>DD INNOVATION LLC<br><br>   Defendant. | Case No. 4:19-cv-04434<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Braydon Preece (Preece) brings this lawsuit to recover unpaid overtime wages and other damages from DD Innovation LLC (DDI) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. Preece worked for DDI as an MWD Operator from approximately January 2017 to July 2017.

3. Preece and the other MWD Operators who worked for DDI in the last three years regularly worked more than 40 hours a week.

4. But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5. Instead of receiving overtime as required by the FLSA, DDI classified Preece and its other MWD Operators as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation.

6. Neither Preece, nor any other MWD Operator who worked for DDI and received a day-rate, received a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper under 28 U.S.C. § 1391(b).

10. DDI conducts substantial business operations in this District and Division.

11. DDI's corporate headquarters is located in Conroe, Texas in this District and Division.

## PARTIES

12. Preece worked for DDI as an MWD Operator from approximately January 2017 until July 2017.

13. Throughout his employment with DDI, Preece was classified as an independent contractor and paid a day-rate with no overtime compensation.

14. Preece's relationship with DDI was an employer/employee relationship.

15. Preece's written consent is attached as <u>Exhibit A</u>.

16. Preece brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by DDI's day-rate system.

17. Although these workers regularly worked more than 40 hours each week, DDI paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All oilfield personnel employed by, or working on behalf of, DD Innovation LLC who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

19. The Putative Class Members are easily ascertainable from DDI's business and personnel records.

20. DDI is a Texas limited liability corporation and may be served by serving its registered agent for service of process, **MWD Diagnostic Services LLC, 3 Olmstead Row, The Woodlands, Texas 77380.**

## COVERAGE UNDER THE FLSA

21. At all relevant times, DDI has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, DDI has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, DDI has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). DDI has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

24. In each of the last three years, DDI has had annual gross volume of sales made or business done of at least $1,000,000.

25. At all relevant times, Preece and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26. DDI treated Preece and the Putative Class Members as employees and uniformly dictated the pay practices applied to Preece and the Putative Class Members.

27. DDI's misclassification of Preece and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

28. DDI's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

29. DDI is an oilfield services company providing measurement while drilling and directional drilling services to oil and gas exploration and production companies operating throughout the United States, including in Texas.

30. To provide these services to its customers, DDI hires oilfield personnel (like Preece) to work on its behalf as MWD Operators.

31. DDI classifies these MWD Operators (including Preece and the Putative Class Members) as independent contractors.

32. But DDI does not hire these workers on a project-by-project basis.

33. Rather, DDI hires and treats these workers just like regular, even if sometimes short-term, employees.

34. During the relevant period, these workers regularly worked for DDI in excess of 40 hours a week.

35. During the relevant period, these workers worked for DDI on a day-rate basis.

36. During the relevant period, these workers were not paid overtime for the hours they worked for DDI in excess of 40 hours each week.

37. These workers make up the proposed Putative Class.

38. While exact job titles and job duties may differ, DDI subjected these workers to the same or similar illegal pay practices for similar work.

39. For example, Preece worked for DDI as an MWD Operator from approximately January 2017 until July 2017 in Texas, Louisiana, and Utah. Throughout his employment with DDI, Preece

regularly worked more than 40 hours each week without receiving overtime compensation. Instead, DDI (either directly or through a third-party) paid Preece a day-rate for each day worked, regardless of how many hours he worked in a day or week.

40. As an MWD Operator, Preece generally worked approximately 14 hours each day for weeks at a time. For example, DDI scheduled Preece to work hitches lasting 21 days on, with 8 days off.

41. As an MWD Operator, Preece's primary job duties included rigging up and rigging down oilfield equipment, operating and maintaining oilfield machinery, collecting and relaying data, and reporting his daily activities to DDI personnel (including DDI's Operations Manager Brandon Baker and DDI's Owner Tim Curren).

42. Preece did not have any supervisory duties.

43. Preece did not hire or fire employees.

44. Preece did not exercise discretion and judgment as to matters of significance.

45. To the contrary, Preece's work was governed entirely by DDI and/or DDI's clients.

46. The Putative Class Members performed the same general job duties performed by Preece.

47. The Putative Class Members worked the same or similar schedule worked by Preece, regularly working more than 40 hours each week. Preece's work schedule is typical of the Putative Class Members.

48. During the relevant period, DDI classified Preece and the Putative Class Members as independent contractors and paid them on a day-rate basis with no overtime compensation.

49. Preece and the Putative Class Members never received a salary.

50. If Preece and the Putative Class Members did not work, they did not get paid.

51. Preece and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

52. Without the job performed by Preece and the Putative Class Members, DDI would not be able to complete its business objectives and provide services to its clients.

53. Preece and the Putative Class Members were economically dependent on DDI and relied on DDI for work and compensation.

54. DDI determined the amount and type of compensation paid to Preece and the Putative Class Members.

55. DDI set Preece and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for DDI.

56. DDI and the Putative Class Members worked in accordance with the schedule set by DDI.

57. DDI prohibited Preece and the Putative Class Members from subcontracting out the work they are assigned by DDI.

58. Preece and the Putative Class Members must follow DDI's policies and procedures.

59. Preece and the Putative Class Members' work must adhere to the quality standards put in place by DDI.

60. Preece and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, DDI and/or its clients provided Preece and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

61. Preece and the Putative Class Members do not provide the significant equipment and programs they work with daily, such as the MWD tool, office space, computers, and other necessary equipment.

62. DDI and/or its clients made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Preece and the Putative Class Members work.

63. Preece and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

64. Preece and the Putative Class Members did not market their services while employed by DDI.

65. While employed by DDI, Preece and the Putative Class Members worked exclusively for DDI.

66. DDI set Preece and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for DDI.

67. At all relevant times, DDI maintained control, oversight, and direction of Preece and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

68. DDI controls Preece's and the Putative Class Members' pay.

69. Likewise, DDI controls Preece and the Putative Class Members' work.

70. Preece and the Putative Class Members' work must adhere to the quality standards put in place by DDI.

71. Preece and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

72. DDI knows Preece and the Putative Class Members regularly work for 12 or more hours a day, for as many as 7 days a week.

73. DDI's records reflect the fact that Preece and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

74. Preece and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Preece and the Putative Class Members are paid on a day-rate basis.

75. DDI sets these workers' schedules and compensation; supervises them; requires them to adhere to strict guidelines, directives, and DDI's policies and procedures.

76. The work Preece and the Putative Class Members perform is an essential part of DDI's core businesses.

77. DDI controls Preece and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates and method in which they are paid.

78. DDI controls all the significant or meaningful aspects of the job duties Preece and the Putative Class Members performed by requiring them to strictly adhere to DDI directives, policies, and procedures.

79. DDI exercises control over the hours and locations Preece and the Putative Class Members work, the tools and equipment they use, the data they input and analyze, and the rates of pay they receive.

80. Even though Preece and the Putative Class Members may work away from DDI's offices without the constant presence of DDI supervisors, DDI still controls significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

81. Very little skill, training, or initiative is required of Preece and the Putative Class Members to perform their job duties.

82. Indeed, the daily and weekly activities of Preece and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by DDI and/or its clients.

83. Virtually every job function is predetermined by DDI, including the tools and equipment used, the data to compile, the schedule of work, and related work duties.

84. DDI prohibits Preece and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Preece and the Putative Class Members to follow DDI's policies, procedures, and directives.

85. Preece and the Putative Class Members perform routine job duties largely dictated by DDI.

86. All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

87. All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

88. All of the Putative Class Members work in excess of 40 hours each week and often work more than 84 hours in a workweek.

89. DDI uniformly denies Preece and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

90. Preece and the Putative Class Members are not employed on a salary basis.

91. Preece and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day-rate they are assigned for all hours worked in a single day or week).

92. DDI's day-rate policy violates the FLSA because it deprives Preece and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

93. DDI knew Preece and the Putative Class Members worked more than 40 hours in a week.

94. DDI knew, or showed reckless disregard for whether, the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

95. DDI knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA's overtime provisions.

96. Nonetheless, Preece and the Putative Class Members were not paid overtime.

97. DDI knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

98. Preece brings this claim as a collective action under the FLSA.

99. The Putative Class Members were victimized by DDI's pattern, practice, and/or policy which is in willful violation of the FLSA.

100. Other Putative Class Members worked with Preece and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

101. Based on his experiences with DDI, Preece is aware that DDI's illegal practices were imposed on the Putative Class Members.

102. The Putative Class Members are similarly situated in all relevant respects.

103. The Putative Class Members are blue-collar workers.

104. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

105. The illegal day-rate policy that DDI imposes on Preece is likewise imposed on all Putative Class Members.

106. Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

107. The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

108. The overtime owed to Preece and the Putative Class Members will be calculated using the same records and using the same formula.

109. Preece's experiences are therefore typical of the experiences of the Putative Class Members.

110. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

111. Preece has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

112. Like each Putative Class Member, Preece has an interest in obtaining the unpaid overtime wages owed under federal law.

113. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

114. Absent a collective action, many Putative Class Members will not obtain redress of their injuries and DDI will reap the unjust benefits of violating the FLSA.

115. Further, even if some of the Putative Class Members could afford individual litigation against DDI, it would be unduly burdensome to the judicial system.

116. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

117. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

118. Among the common questions of law and fact are:

   a. Whether DDI employed the Putative Class Members within the meaning of the FLSA;

   b. Whether DDI's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

   c. Whether DDI's violation of the FLSA was willful; and

   d. Whether DDI's illegal pay practice applied to the Putative Class Members.

119. Preece and the Putative Class Members sustained damages arising out of DDI's illegal and uniform employment policy.

120. Preece knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

121. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to DDI's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

122. DDI is liable under the FLSA for failing to pay overtime to Preece and the Putative Class Members.

123. Consistent with DDI's illegal day-rate policy, Preece and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

124. As part of their regular business practices, DDI intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Preece and the Putative Class Members.

125. DDI's illegal day-rate policy deprived Preece and the Putative Class Members of the premium overtime wages they are owed under federal law.

126. DDI is aware, or should have been aware, that the FLSA required it to pay Preece and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

127. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

128. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

129. Those similarly situated employees are known to DDI, are readily identifiable, and can be located through DDI's records.

### CAUSE OF ACTION
### VIOLATION OF THE FLSA

130. Preece realleges and incorporates by reference all allegations in preceding paragraphs.

131. Preece brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

132. DDI violated, and is violating, the FLSA by failing to pay Preece and the Putative Class Members overtime.

133. DDI misclassified Preece and Putative Class Members for purposes of the FLSA overtime requirements.

134. Preece and the Putative Class Members were DDI's employees for purposes of the FLSA overtime requirements.

135. DDI was Preece and the Putative Class Members' employer under the FLSA. DDI suffered or permitted Preece and the Putative Class Members to work for or on its behalf during the relevant period.

136. DDI cannot meet its burden to demonstrate Preece and Putative Class Members are exempt from overtime under the administrative exemption.

137. DDI cannot meet its burden to demonstrate the Preece and Putative Class Members are exempt from overtime under the executive exemption.

138. DDI cannot meet its burden to demonstrate Preece and Putative Class Members are exempt from overtime under the professional exemption.

139. DDI cannot meet its burden to demonstrate Preece and Putative Class Members are exempt from overtime under the highly compensated exemption.

140. DDI misclassified Preece and the Putative Class Members as independent contractors.

141. DDI failed to guarantee Preece and the Putative Class Members a salary.

142. DDI failed to pay Preece and the Putative Class Members overtime.

143. DDI paid Preece and the Putative Class Members a day-rate.

144. DDI knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Preece and the Putative Class Members overtime compensation.

145. DDI's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

146. Accordingly, Preece and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

147. Preece demands a trial by jury.

## PRAYER

WHEREFORE, Preece, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b. A judgment against DDI awarding Preece and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d. An order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 308410
Fed. Id. No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Fed. Id. No. 1093163
**Lindsay R. Itkin**
Texas Bar No. 24068647
Fed. Id. No. 1458866
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
litkin@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Fed. Id. No. 21615
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**